## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **TEAMSTERS AND EMPLOYERS** | ) | |
| **WELFARE TRUST OF ILLINOIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 14-03386** |
| | ) | |
| **GWILLIM TRUCKING, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Now before the Court is Plaintiff Teamsters and Employers Welfare Trust of Illinois' Combined Motion and Memorandum of Law for Summary Judgment Against Gwillim Trucking, Inc. (Mot. for Summ. Judg.) (d/e 14).  Plaintiff's motion is GRANTED IN PART and DENIED IN PART.  There is no genuine dispute of material fact regarding the amount owed to Plaintiff by Defendant Gwillim Trucking, Inc. for the time period beginning on January 1, 2007, and ending on June 30, 2014.  However, Defendant has raised a genuine dispute of material fact regarding the amount it owes

Plaintiff for the time period beginning on July 1, 2014, and ending on September 30, 2015.

## I.  INTRODUCTION

Plaintiff is a trust fund administered to provide participating employees with health and welfare benefits.  Plaintiff receives contributions from employers and employer associations pursuant to agreements, including participation agreements and collective bargaining agreements, between local unions and employers and employer associations.  Defendant employs individuals who are members of, and represented by, Chauffeurs, Teamsters, Warehousemen, and Helpers, Local Union No. 525 (Local 525).

On December 11, 2014, Plaintiff filed a three-count Complaint (d/e 1) alleging that Defendant had failed to pay Plaintiff contributions as required by collective bargaining agreements and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq.  Count I of Plaintiff's Complaint alleges that Defendant is liable to Plaintiff for unpaid contributions that came due between February 2014 and October 2014.  Count II alleges that Defendant is liable to Plaintiff for unpaid contributions that came due between January 2007 and December 2009.  Count III

alleges that Defendant is liable to Plaintiff for unpaid contributions that came due after December 2009.  Plaintiff also seeks liquidated damages, audit costs, and attorney's fees.

Plaintiff seeks summary judgment on Counts II and III of its Complaint.  Plaintiff argues that Defendant owes it money as a result of failing to make payments required by collective bargaining agreements and a participation agreement, a point that Defendant does not dispute.   Plaintiff also argues that Defendant has not raised any genuine dispute of material fact regarding the amount owed by Defendant to Plaintiff, an amount derived from audit reports prepared at Plaintiff's request and based on Defendant's tax and payroll records.  In response, Defendant argues that criminal charges recently filed against its business manager raise a genuine dispute of material fact regarding the amounts owed to Plaintiff. Plaintiff disagrees that the pending criminal charges create a genuine dispute of material fact as to the amount it is owed.

## II.  BACKGROUND

The parties do not dispute the majority of the facts relevant to this action.  Defendant was a signatory to three collective bargaining agreements with Local 525.  See Mot. for Summ. Judg.,

Exs. 2A, 2B, 2C.  The three agreements covered, respectively, the time periods from October 2, 2006 to September 30, 2009; from October 2, 2009 to September 30, 2012; and from October 1, 2012 to September 30, 2015.  All three collective bargaining agreements required Defendant to make weekly contributions to Plaintiff for each covered employee who had been on Defendant's payroll at least 31 days and had worked any portion of a payroll week.  Mot. for Summ. Judg., Ex. 2A, Article 20; Ex. 2B, Article 20; Ex. 2C, Article 20.  The agreements also required employers who were delinquent in their contributions to pay attorney's fees and collection costs.

The rates at which the Defendant was obligated to contribute to Plaintiff varied not only from agreement to agreement, but also from year to year.  For example, in the collective bargaining agreement covering October 2, 2006 through September 30, 2009, Defendant was obligated to pay $160.00 per week per qualifying employee in the first year, $183.00 per week the second year, and $210.00 per week the second year.  Mot. for Summ. Judg., Ex. 2A, Article 20.  The agreement covering October 2, 2009 through September 30, 2012, imposed rates for each year at $176.00 per

week, $202.00 per week, and $231.00 per week, respectively.  Mot. for Summ. Judg., Ex. 2B, Article 20.  The agreement covering October 1, 2012 through September 30, 2015, imposed rates for each year at $200.00 per week, $229.00 per week, and $262.00 per week, respectively.  Mot. for Summ. Judg., Ex. 2C, Article 20.  If Defendant paid a qualifying employee wages for any portion of a payroll week for work performed under a collective bargaining agreement, the full weekly contribution amount was due from Defendant to Plaintiff for that employee; no pro rata payments were contemplated by the parties.

In addition, Defendant was a signatory to a participation agreement with Plaintiff during the time frame covered by the collective bargaining agreements.  Under this agreement, Defendant was required to remit contributions to Plaintiff for employees that did not fall under the purview of the collective bargaining agreements.  Mot. for Summ. Judg., Ex. 3A.  The rates at which these contributions for non-bargaining employees were to be paid and the formula applied to determine whether payments were due were identical to those imposed on Defendant by the collective bargaining agreement in effect at the time.  Id. ¶ 6.

The collective bargaining agreements entered into by Local 525 and Defendant and the participation agreement entered into by Plaintiff and Defendant imposed the terms of Plaintiff's trust agreement on Defendant.  Mot. for Summ. Judg., Ex. 2A, Article 20; Ex. 2B, Article 20; Ex. 2C, Article 20; Ex. 3A, ¶ 1.  The trust agreement authorizes Plaintiff to audit an employer's employment and payroll records, recover liquidated damages from delinquent employers in the amount of 10% of the total owed, and recover costs and expenses, including attorney's fees and audit costs.  Mot. for Summ. Judg., Ex. 1A, Section 4.4.

As authorized by the trust agreement, Plaintiff hired Zenith American Solutions (Zenith) to conduct an audit of Defendant's payroll records from January 1, 2007 to December 31, 2009.  The audit report prepared by Zenith concluded that Defendant owed Plaintiff $33,201.00 in unpaid contributions.  Mot. for Summ. Judg., Ex. 3B.  Adding $3,320.10 in liquidated damages (10 percent of the total owed) and $617.50 in audit charges, Defendant owed Plaintiff a total of $37,138.60 for the time period of January 1, 2007 to December 31, 2009.  Id.  Payments subsequently made by Defendant lowered its obligation to Plaintiff for this time period to

$24.138.60.  A copy of Zenith's audit report was sent to Defendant with a letter explaining that Defendant could challenge the report's findings.

Plaintiff subsequently hired Zenith to examine Defendant's payroll records from January 1, 2010 to December 30, 2015. Defendant did not provide all the documents requested by Zenith with respect to the audit.  Nevertheless, based on the documents Defendant did produce—various tax forms and a payroll transaction report—Zenith prepared another audit report, which concluded that Defendant owed Plaintiff $640,743.00 in delinquent contributions, $64,074.30 in liquidated damages, and $6,370.00 for audit costs, for a total of $711,187.30.  See Mot. for Summ. Judg., Ex. 5B. However, the most recent collective bargaining agreement between Local 525 and Defendant expired on September 30, 2015; therefore, Defendant was not obligated to make contributions to Plaintiff in October, November, or December of 2015.  According to the second audit report, Defendant owes Plaintiff $639,186.80 for the time period starting on January 1, 2010, and ending on September 30, 2015.  This revised total amount breaks down as follows: $575,288.00 in delinquent contributions, $57,528.80 in liquidated

damages, and $6,370.00 for audit costs.  A copy of this second Zenith audit report was sent to Defendant with a letter explaining that Defendant could challenge the report's findings.

On October 17, 2016, the Macoupin County State's Attorney charged Kari A. McKinney, Defendant's office manager, with one count of theft, alleging that Ms. McKinney stole between $100,000 and $500,000 from Defendant.  Def. Response Mot. for Summ. Judg. (d/e 20), Ex. 1, p. 6.  Approximately one month later, on November 16, 2016, the Macoupin County State's Attorney filed 98 additional counts against Ms. McKinney.  See Def. Response Mot. for Summ. Judg., Ex. 1, pp. 7-113.  These counts allege that from July 2014 to February 2016, Ms. McKinney committed forgery by endorsing checks drawn on Defendant's bank account made out to persons other than Ms. McKinney.  See id.

### III. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant

believes demonstrates the absence of a genuine dispute of material

fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  No

genuine dispute of material fact exists if a reasonable trier of fact

could not find in favor of the nonmoving party.  Brewer v. Bd. of

Trustees of Univ. of Ill., 479 F.3d 908, 915 (7th Cir. 2007).  When

ruling on a motion for summary judgment, the Court must construe

facts in the light most favorable to the nonmoving party and draw

all reasonable inferences in the nonmoving party's favor.  Woodruff

v. Mason, 542 F.3d 545, 550 (7th Cir. 2008).  The Court may grant

partial summary judgment in order to narrow the factual issues for

trial "by identifying the material disputes of fact that continue to

exist."  BBL, Inc. v. City of Angola, 809 F.3d 317, 325 (7th Cir.

2015).

## IV.  ANALYSIS

The Court notes briefly that it has jurisdiction over Plaintiff's

ERISA claims pursuant to 29 U.S.C. § 1132(e)(1).  ERISA defines an

"employer" as "any person acting directly as an employer, or

indirectly in the interest of an employer, in relation to an employee

benefit plan."  29 U.S.C. § 1002(5).  A "multiemployer plan" is one

to which more than one employer must contribute and one

maintained pursuant to "one or more collective bargaining agreements between one or more employee organizations and more than one employer."  29 U.S.C. § 1002(37)(A).  Every employer obligated to make contributions to a multiemployer plan under the terms of the plan or the terms of a collectively bargained agreement shall make the contributions in accordance with the terms and conditions of the plan or agreement.  29 U.S.C. § 1145.

Given that Defendant, which employs members of Local 525, was a signatory to collective bargaining agreements with Local 525 and a participation agreement with Plaintiff, agreements which required Defendant to make contributions to Plaintiff, Defendant is an "employer" as defined by ERISA.  Similarly, Plaintiff meets the ERISA definition of a "multiemployer plan" because it receives contributions from multiple employers.  Therefore, 29 U.S.C. § 1145 required Defendant to make contributions to Plaintiff as required by Plaintiff's trust agreement and the aforementioned collective bargaining agreements and participation agreement.  Defendant, to its credit, admits that it owes Plaintiff for unpaid contributions.  The remaining question is how much Defendant owes.

The collective bargaining agreements and participation agreement required Defendant to make weekly payments to Plaintiff for every employee who has been on Defendant's payroll for at least 31 days and worked any portion of the applicable payroll week.  The rate at which Defendant was to pay for each qualifying employee varied from year to year and ranged from $160.00 per week to $262.00 per week.  In order to determine Defendant's total liability under this payment structure, Plaintiff hired Zenith to conduct two audits.  The first audit determined that Defendant owed $37,138.60 in unpaid contributions, liquidated damages, and audit fees for the period from January 1, 2007 to December 31, 2009, the time period with which Count II of the Complaint is concerned.  Plaintiff acknowledges that a partial payment by Defendant lowered the current balance for this time period to $24,138.60.  With this figure, Defendant does not argue.  Accordingly, there is no genuine dispute of material fact with respect to Count II of Plaintiff's Complaint, and Plaintiff is entitled to judgment for the remaining balance as a matter of law.  The Court grants summary judgment in favor of Plaintiff on Count II of the Complaint.  Plaintiff is awarded

$24,138.60 for unpaid contributions, liquidated damages, and audit fees.

Determining whether Plaintiff is entitled to summary judgment on Count III of the Complaint is a more difficult question. The Court has determined that partial summary judgment in favor of Plaintiff on Count III is proper based on the current record, which includes information regarding pending criminal charges against Defendant's business manager.

ERISA requires an employer to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). Accordingly, where an employer is required to make contributions to a trust fund that provides fringe benefits to employees, the records an employer must keep to satisfy this statutory provision will necessarily depend on the factors that go into determining when the employer's contributions become due. If, as here, the payments are dictated by the dates on which the employee worked, the records the employer must keep include those which indicate the dates on which each employee worked. See Laborers' Pension Fund v. RES Envtl. Servs., Inc., 377 F.3d 735, 739 (7th Cir. 2004).

"[O]nce a pension or welfare fund shows that an employer's records are deficient and produces an apparently sound accounting suggesting that money is owed, the employer could be obliged to explain why its payments to the fund are nonetheless proper.  Chi. Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co., 347 F.3d 262, 264 (7th Cir. 2003).  "If the explanation appears to be sufficient, then the fund must demonstrate at trial its entitlement to additional payment."  Id.  This burden, when placed on defendant employers, is a burden of explanation, not a burden of persuasion. Id.  If the employer is unable to meet its burden, the fund is entitled to prevail on summary judgment.  Id.

Here, Defendant does not argue with Plaintiff's contention that Defendant's payroll records were deficient.  Nor does Defendant dispute that Section 4.6 of Plaintiff's trust agreement gave Plaintiff the right to have an auditor inspect Defendant's payroll records. See Mot. for Summ. Judg., Ex. 1A, Section 4.6.  Therefore, it was Defendant's burden to produce evidence on which a reasonable trier of fact could conclude that the amount Plaintiff claims Defendant owes for the time period from January 1, 2010 to December 31, 2015, is too high.

With its amended response to Plaintiff's motion for summary judgment, Defendant provided the Court with public records indicating that Defendant's business manager (now its former business manager, presumably) has been charged with one count of theft and 98 counts of forgery.  These charges relate to checks payable on Defendant's bank account and made out to certain of Defendant's current and former employees, checks the business manager allegedly signed as payee.  According to Defendant, the checks were written by Ms. McKinney without authorization and do not relate to any actual wages due to the purported payees, certain of Defendant's employees.  Defendant has asked its accountants to file amended tax returns and issue amended tax forms as a result of Ms. McKinney's alleged crimes.

Before addressing these records in its amended reply in support of its motion for summary judgment, Plaintiff asks the Court to strike Defendant's response to the motion for failure to satisfy Local Rule 7.1(D).  Local Rule 7.1(D) requires responses to motions for summary judgment to contain certain sections and, where appropriate, citations to evidentiary documentation referenced by specific page.  See CDIL-LR 7.1(D).  Plaintiff correctly

notes that the Court admonished Defendant about the need to comply with Local Rule 7.1(D) when it allowed Defendant additional time in which to file an amended response to Plaintiff's motion for summary judgment.  Plaintiff is also correct in stating that Local Rule 7.1(D) puts litigants on notice that the Court may strike any filing not in compliance with the rule's requirements.  See id. However, the Court is unwilling to strike Defendant's amended response for technical violations of a local rule when, as explained below, the amended response raises a genuine dispute of material fact as to how much Defendant owes Plaintiff for the time period beginning on July 1, 2014, and ending on September 30, 2015. The decision on whether to apply a local rule strictly or overlook a transgression is left to the discretion of this Court.  See Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 923 (7th Cir. 1994).  Given that a ruling striking Defendant's amended response carries with it the potential to award a party thousands of dollars to which it may not be legally entitled, the Court refuses to strike the amended response for its failure to strictly comply with Local Rule 7.1(D).

Turning now to the substance of Defendant's amended response, Plaintiff argues that Defendant has provided no

explanation as to how the purportedly fraudulent checks contradict the second Zenith audit support.  But Defendant does argue that the checks allegedly written by Ms. McKinney do not correspond to wages that were due current or former employees.  And if the checks were not related to wages that were due any employee, an audit that took into account those checks to determine when Defendant's employees worked would not be completely accurate. Given that Zenith's second audit report was based, in part, on a payroll transaction report produced by Defendant, a trier of fact could reasonably conclude that the presence of fraudulent checks made out to Defendant's current or former employees caused Zenith's auditor to conclude that those employees worked during the weeks to which the checks corresponded even though they did not.  Indeed, a cursory comparison of the charges against Ms. McKinney and the second Zenith audit report show that many of the allegedly fraudulent checks correspond with employees and dates where the Zenith auditor found Defendant delinquent with respect to contributions owed to Plaintiff.  See, e.g., Mot. for Summ. Judg., Ex. 5B, pp. 60-62, 64, 66 (spreadsheets calculating Defendant's unpaid contributions from December 2014 and

January, February, April, and June of 2015) ; Def. Response, Ex. 1,
pp. 13-20 (criminal charges accusing Ms. McKinney of forging the
signatures of employees on checks written in December 2014 and
January, February, April, and June of 2015).  And there is no
indication in the record before the Court that Zenith was aware of
the allegedly fraudulent checks and excluded them from the
analysis conducted during the second audit.

In addition, Defendant has indicated that its accountants are
preparing amended tax forms and tax returns in light of the
revelation of Ms. McKinney's alleged wrongdoing.  Zenith relied on
the tax documents Defendant provided it in creating the second
audit report, and any amendments to those documents based on
fraudulent checks could only lower Defendant's contribution
liability.  Given that the amount of the unpaid contributions is
directly dependent on the days on which Defendant's employees
worked, the allegedly fraudulent checks, when viewed in
conjunction with the second Zenith audit report, raise a material
dispute as to the issue of how much Defendant owes Plaintiff for
unpaid contributions from July 1, 2014 to September 30, 2015.  It
may be that the Zenith audit report is accurate with respect to the

contributions Defendant failed to pay Plaintiff from July 1, 2014 to September 30, 2015.  For instance, it could be that the employees named on the checks allegedly signed by Ms. McKinney did work during the weeks to which those checks corresponded.  But Plaintiff has not met its burden in supplying the facts needed for the Court to reach such a conclusion.   Plaintiff notes that the criminal charges against Ms. McKinney are "unproven."  Plaintiff is correct, but that does not mean that its motion for summary judgment must be granted in its entirety.  While the charges against Ms. McKinney may ultimately prove unfounded, at this time, they are sufficient to cast doubt upon the accuracy of the second Zenith audit report, thereby making a grant of summary judgment in favor of Plaintiff for the time period from July 1, 2014 to September 30, 2015, inappropriate.  See Ill. Conference of Teamsters & Employers Welfare Fund v. Steve Gilbert Trucking, 71 F.3d 1361, 1367 (7th Cir. 1995) (holding that the defendant employer "asserted several facts that would cast doubt upon the accuracy" of the plaintiff's calculations, thereby creating a genuine dispute of material fact).

Plaintiff's request for summary judgment on Count III of its Complaint is not defeated in its entirety, however.  Given that none

of the charges brought against Ms. McKinney involve actions earlier than July 2014, Defendant has failed to raise a genuine dispute of material fact regarding the amount owed to Plaintiff for the time period from January 1, 2010 to June 30, 2014.  The Court therefore grants summary judgment in favor of Plaintiff on Count III of the Complaint, but only as to the time period from January 1, 2010 to June 30, 2014.  According to the second Zenith audit report, this amount stands at $199,990.00 in unpaid contributions and $19,999.00 in liquidated damages, for a total of $219,989.00.

Defendant also argues that written notice provided by Plaintiff indicated that it would not be providing Defendant's employees with medical coverage after October 31, 2014, due to existing delinquencies.  Because Defendant failed to attach the written notice on which it bases this argument to its response to Plaintiff's motion for summary judgment, the Court refuses to consider the argument at this time.  See Killian v. Concert Health Plan, 651 F. Supp. 2d 770, 774 (N.D. Ill. 2009) (refusing to consider summary judgment argument based on documents not submitted as exhibits).

Given that the criminal charges against Ms. McKinney were not filed until after the deadline for Plaintiff's motion for summary judgment, the parties may benefit from additional discovery relevant to the issue of whether the allegedly fraudulent checks have any bearing on the amount owed by Defendant to Plaintiff for unpaid contributions.  Therefore, the Court VACATES the discovery deadline of December 9, 2015, and the dispositive motion deadline of June 10, 2016.  The parties shall have until April 7, 2017, to complete additional discovery.  The parties shall have until June 2, 2017, to file dispositive motions.  The Final Pretrial Conference set for March 9, 2017, is CONTINUED to Monday, August 28, 2017. The Bench Trial set for March 21, 2017, is CONTINUED to September 19, 2017.

In any action in which the Court enters judgment in favor of a plan seeking to enforce 29 U.S.C. § 1145, the Court is required to award the plan the following: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) an amount equal to the greater of the interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not in excess of 20 percent of the amount of the unpaid contributions; (4) reasonable

attorney's fees; and (5) the costs of the action. 29 U.S.C. §
1132(g)(2).  Because the Court has granted summary judgment in
favor of Plaintiff on Count II of the Complaint and partial summary
judgment on Count III of the Complaint, Plaintiff is entitled to pre-
judgment interest on the unpaid contributions, attorney's fees, and
costs in addition to the amounts it has been awarded with respect
to unpaid contributions, liquidated damages, and audit costs.

### V.  CONCLUSION

For the reasons stated, Plaintiff Teamsters and Employers
Welfare Trust of Illinois' Combined Motion and Memorandum of
Law for Summary Judgment Against Gwillim Trucking, Inc. (d/e 14)
is GRANTED IN PART and DENIED IN PART.  Judgment is entered
in favor of Plaintiff and against Defendant on Count II of Plaintiff's
Complaint in the amount of $24,138.60.  Partial judgment is
entered in favor of Plaintiff and against Defendant on Count III of
Plaintiff's Complaint in the amount of $219,989.00.  Plaintiff's claim
against Defendant in Count III for unpaid contributions from July
1, 2014 to September 30, 2015, remains pending.  Plaintiff is
granted leave to file a petition for its attorney's fees, pre-judgment
interest, and costs and should file its petition within 21 days of the

date of this Order.  Pursuant to Federal Rule of Civil Procedure 54(b), the Court finds no just reason for delay.

ENTER: February 14, 2017.

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE