E-FILED
Wednesday, 27 February, 2019  10:42:23 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **TEAMSTERS AND EMPLOYERS WELFARE TRUST OF ILLINOIS,** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 14-cv-03386<br>) |
| **GWILLIM TRUCKING, INC.,** | )<br>)<br>) |
| Defendant. | ) |

**OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge:**

This cause is before the Court on Plaintiff Teamsters and Employers Welfare Trust of Illinois' Rule 25(c) Combined Motion and Memorandum to Substitute TKNG Transportation, Inc. (TKNG) as a Party Defendant (d/e 35). Because TKNG had notice of the judgment before an interest was transferred to TKNG and there was substantial continuity in the operation of the business, the Motion is GRANTED.

**I. BACKGROUND**

On December 11, 2014, Plaintiff filed a three-count Complaint (d/e 1) alleging that Defendant Gwillim Trucking, Inc. failed to pay

Plaintiff contributions as required by collective bargaining agreements and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. Count I of Plaintiff's Complaint alleged that Defendant was liable to Plaintiff for unpaid contributions that came due between February 2014 and October 2014. Count II alleged that Defendant was liable to Plaintiff for unpaid contributions that came due between January 2007 and December 2009. Count III alleged that Defendant was liable to Plaintiff for unpaid contributions that came due after December 2009.

In February 2017, this Court granted summary judgment in favor of Plaintiff on Count II of Plaintiff's Complaint in the amount of $24,138.60. The Court granted partial summary judgment on Count III in the amount of $219,989 for the time period of January 1, 2010 to June 30, 2014, leaving pending the period from July 1, 2014 to September 30, 2015. (It appears that the relief sought in Count I was subsumed in Count III, as the parties have not addressed Count I). The Court expressly found, pursuant to Federal Rule of Civil Procedure 54(b), "no just reason for delay." Opinion at 22 (d/e 24).

On August 10, 2017, Plaintiff filed a Status Report (d/e 28) indicating that Plaintiff would no longer pursue the remaining liability sought in Count III and intended to dedicate its resources to collecting the judgment the Court entered in February 2017. On September 5, 3017, a Citation to Discover Assets (d/e 31) was issued to "Gwillim Trucking, Inc., Attn: Michael Gwillim."

On September 14, 2017, Mr. Gwillim appeared for the Citation. Mr. Gwillim testified that, at the time judgment was entered in this case, he was the sole owner of Defendant and held the position of secretary. Defendant closed on August 7, 2017 and is no longer in operation. Also, on August 7, 2017, Mr. Gwillim started TKNG[1], a trucking company. Mr. Gwillim is president of TKNG and the sole owner.

Mr. Gwillim testified that TKNG employs the same employees Defendant employed, although TKNG added one extra person in the shop. TKNG is in the same building Defendant occupied at 1525 North Sumner. TKNG transports refrigerated and dry freight for Prairie Farms, the customer who was the main source of income for

---

[1] The transcript of the hearing mistakenly refers to "TK&G Transportation."

Defendant the last year of Defendant's operation. The monthly gross income from Prairie Farms is the same for TKNG as it was for Defendant—approximately $90,000 a month. Like Defendant, TKNG works on a few trucks for Gully Transportation.

Mr. Gwillim testified that, prior to Defendant closing, the only assets Defendant had were six trucks. Defendant had loans of approximately $25,152, $129,000, and $13,000 with Carlinville National Bank. The bank had a security interest in the assets of Defendant. When asked if Defendant had anything worked out with the bank regarding the loans, Mr. Gwillim testified that TKNG was making the payments and TKNG took "over the debt of the trucks." Mr. Gwillim also testified that "we're running trucks that are, you know, 20 years old," which appears to be a reference to TKNG using Defendant's six trucks in TKNG's business. Tr. at 22 (d/e 32).

In January 2018, this Court awarded Plaintiff $28,144.70 for attorney's fees and $788.44 for costs pursuant to 29 U.S.C. § 1132(g)(2)(D). On March 19, 2018, Plaintiff filed a Notice of Voluntary Dismissal dismissing without prejudice the remaining portion of Count III. The Court acknowledged the voluntary dismissal and closed the case.

On July 12, 2018, Plaintiff filed the Rule 25(c) Combined Motion and Memorandum to Substitute TKNG Transportation, Inc. as a Party Defendant (d/e 35) at issue herein. Plaintiff requests that the Court enter an order substituting TKNG as a party defendant liable for the unpaid balance of the judgment against Defendant. Plaintiff also requests in the alternative that, if the Court denies the Motion, the Court allow Plaintiff to engage in limited discovery on the question of successorship.

On August 6, 2018, Defendant filed a Response in Opposition (d/e 37). On February 26, 2019, TKNG filed a Waiver of Service and Entry of Appearance (d/e 40) joining in Defendant's Response.

## II. ANALYSIS

Federal Rule of Civil Procedure 25(c) provides that, "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed.R.Civ.P. 25(c). Substitution of a party under Rule 25(c) is discretionary with the court. Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 743 (7th Cir. 1985).

Whether the Court should grant the motion and substitute TKNG in this action depends on whether TKNG is a successor-in-interest of Defendant.  The general rule is that a corporation that purchases the assets of another does not assume the seller corporation's liabilities.  Sullivan v. Running Waters Irrigation, Inc., 739 F.3d 354, 357 (7th Cir. 2014).  Several exceptions to this general rule exist, including an exception in the context of ERISA actions to recover delinquent pension fund contributions.  Id.  In the ERISA context, a plaintiff may proceed against the subsequent purchaser of a business if (1) the successor had notice of the claim before the acquisition and (2) there is a substantial continuity of operation of the business before and after the sale.  Id.  Several courts in the Northern District have held that successor liability extends beyond situations where assets are sold and extends "any reorganization that results in a substantial continuation of the business by the successor and either obliterates the previous business or leaves it as an empty shell."  Tr. of Chi. Regional Council of Carpenters Pension Fund v. Conforti Const. Co., Inc., No. 09 C 322, 2013 WL 3771415, at *2 (N.D. Ill. July 17, 2013) (internal quotation marks) (quoting and citing cases); see also Sullivan, 739

F.3d at 357 ("However, Artistic Furniture does not require a formal purchase of assets to establish successor liability in the ERISA context.") (citing Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323, 1327-29 (7th Cir. 1990)).

Defendant and TKNG do not dispute that the second requirement for successor liability is met, agreeing that TKNG "is a continuity of the business operation of" Defendant. Resp. at 3. Defendant and TKNG do dispute, however, that TKNG had notice of liability before an interest was transferred because no specific interest was transferred by Defendant to TKNG and Defendant continues as an entity.

A similar argument was made in Sullivan v. Running Waters Irrigation, Inc., 739 F.3d 354. In Sullivan, two interrelated companies, Running Waters Irrigation, Inc. (RWI) and JV Equipment Leasing, LLC (JV) challenged their substitution as judgment debtors for the predecessor company, Alpine Irrigation Company (Alpine). Id. at 355 (noting that Alpine was in arrears on pension fund payments). RWI and JV were established contemporaneously with Alpine's closing. Id. at 356. RWI serviced and occasionally installed law irrigation systems. Id. JV's sole

business was to lease to RWI six pieces of equipment that JV purchased from Alpine.  Id.

The district court held that RWI and JV were successors and substituted RWI and JV for Alpine.  Id.  On appeal, RWI and JV argued that only a substantial transfer of assets could trigger substitution under Rule 25(c) and because JV only acquired six pieces of equipment and RWI acquired no assets from Alpine, no interest had been transferred.  Id. at 357.

The Seventh Circuit disagreed, noting that a formal purchase of assets is not required to establish successor liability in the ERISA context.  Id.  The Seventh Circuit also rejected RWI and JV's argument that the transfer of assets was insufficient to establish continuity, noting that "it is clear that together JV and RWI took on every aspect of Alpine's former business."  Id. at 358.

Similarly, here, TKNG assumed Defendant's loans and apparently took possession of the only assets of Defendant—the six trucks.  TKNG has also, as Defendant and TKNG admit, continued the business operation of Defendant.  Consequently, the Court finds that an interest was transferred from Defendant to TKNG.  See also, e.g., Panther Pumps & Equip. Co., Inc. v. Hydrocraft, Inc., 566 F.2d

8, 22, 25 (7th Cir. 1977) (permitting the substitution of the sole owner of a newly formed corporation as a successor-defendant where the individual used his alter ego company to effect a continuance of the original company—the newly formed corporation and the original corporation had the same owner and the inventory of the original corporation was transferred without monetary consideration to the new corporation so that the new corporation could make a substantially identical product).

Defendant and TKNG also argue, without citation to any authority, that there was no transfer of interest "particularly in that the Judgment liability had already been imposed and there were no disputed issues of fact or appeal pending related to the prior Judgment." Resp. at 3. Defendant and TKNG do not elaborate on this argument, and the Court finds the argument forfeited.

Finally, the Court finds TKNG had notice of the claim before the transfer of interest. Notice can be shown by actual knowledge or evidence from which knowledge can be implied. Sullivan, 739 F.3d at 357. Here, Michael Gwillim was the sole owner of Defendant when the judgment was entered. Michael Gwillim is also the sole owner of TKNG. The transfer occurred on or after August

7, 2017—the date Defendant ceased operation and TKNG was formed. The Court granted partial summary judgment in February 2017, and the judgment was effective July 17, 2017. See February 8, 2019 Text Order. Because Michael Gwillim was the sole owner of both companies, knowledge by TKNG of the claim against Defendant can, at the very least, be implied. See, e.g., Sullivan, 739 F.3d at 356-357 (finding the district court did not clearly err by concluding that notice existed where the owner of the original company admitted his son knew more about the company's assets and operations than he did; the son held a leadership position in the original company and the two companies established contemporaneously with the original company's closing; and the son owned the property on which all of the companies were located).

### III. CONCLUSION

For the reasons stated, Plaintiff's Rule 25(c) Combined Motion and Memorandum to Substitute TKNG Transportation, Inc. as a Party Defendant (d/e 35) is GRANTED. The Clerk is DIRECTED to enter judgment in favor of Plaintiff and against TKNG Transportation, Inc. in the amount of $24,138.60 on Count II,

$219,989 on Count III, $28,144.70 for attorney's fees, and $788.44 in costs.  This case remains closed.

**ENTERED: February 27, 2019**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**